NOT DESIGNATED FOR PUBLICATION

Nos. 113,813
113,814
113,815
113,816

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of J.A.F., H.O., J.O., and T.O.


MEMORANDUM OPINION


Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed November 13, 2015. Affirmed.

John R. Kurth, of Kurth Law Office Incorporated, P.A., of Atchison, for appellant natural mother.

Bethany J. Lee, assistant county attorney, for appellee.


Before HILL, P.J., PIERRON and POWELL, JJ.


Per Curiam:  A.F., the natural mother of J.A.F., H.O., J.O., and T.O., appeals the district court's termination of her parental rights. She claims the district court's determination that she is unfit, that her unfitness is unlikely to change in the foreseeable future, and that termination is in the children's best interests was not supported by sufficient evidence. We disagree and affirm.


FACTUAL AND PROCEDURAL HISTORY


In April 2012, after Mother's boyfriend and the natural father of H.O. (born in 2008), J.O. (born in 2009), and T.O. (born in 2010), who were all under the age of 4, was alleged to have struck and strangled 13-year-old J.A.F., the State filed child in need of

1

care (CINC) petitions on behalf of the four children. The district court appointed a guardian ad litem and placed the children in the custody of Social and Rehabilitation Services (now the Department for Children and Families) but recommended placement with Mother.

In June 2012, the district court ordered immediate out-of-home placement for the children after learning that Mother had tested positive for methamphetamine in May. In August, Mother entered a no contest plea to the CINC petitions, and the district court adjudicated the children as CINCs. That October, the district court approved a reintegration plan that tasked Mother with: (1) acquiring safe and stable housing; (2) obtaining and maintaining legal income sufficient to support her family; (3) submitting to random urine analysis (UA) tests; (4) completing RADAC screening; (5) completing parenting classes; (6) participating in weekly mental health services; (7) looking for a new place for the family to live; and (8) abstaining from using any illegal drugs or incurring new legal charges. In June 2013, J.A.F.'s natural father relinquished his parental rights.

In June 2014, nearly 2 years after the children had been adjudicated as CINCs, the district court determined reintegration was no longer viable and found that adoption or a permanent guardianship was in the children's best interests, citing Mother's missed UA tests, lack of employment, and failure to acquire suitable housing. Mother was told, however, that the case plan could be changed back to reintegration if she was able to: (1) maintain stable, drug-free housing; (2) find legal employment; (3) speak with her attorney about termination and relinquishment; (4) maintain contact with the agency at least twice a month and informing it of any address or phone number changes; and (5) submit to random UA tests.

In October 2014, the State filed a motion to terminate Mother's parental rights, alleging Mother was unfit because of the use of intoxicating liquors or narcotics; the

existence of physical, mental, or emotional abuse; and a lack of effort on Mother's part to adjust her circumstances, conduct, or condition to meet the children's needs. The State also alleged that the children had been in extended out-of-home placement because Mother had failed to maintain regular visitation, contact or communication with her case manager, failed to complete the tasks of the parenting plan, and failed to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay.

A termination hearing was held October 21, 2014. At the hearing, the natural father of H.O., J.O., and T.O. relinquished his parental rights, which the district court accepted. The hearing was then suspended until December 2, 2014. After listening to the evidence presented and reviewing the parties' documents, the district court found that Mother was unfit and that it was unlikely that her unfitness would change in the future. The district court specifically noted Mother's: (1) failure to adjust her circumstances so that she could provide for the four children; (2) failure to maintain consistent contact with her case managers; (3) missed and failed UA tests; (4) failure to acquire suitable housing and employment; (5) missed visits with the children; and (6) failure to complete reintegration tasks and rehabilitation treatment. The district court also determined that termination was in the children's best interests and terminated Mother's parental rights.

Mother timely appeals.

DID CLEAR AND CONVINCING EVIDENCE SUPPORT THE DISTRICT COURT'S
DECISION TO TERMINATE MOTHER'S PARENTAL RIGHTS?

If a child is adjudicated a child in need of care, parental rights may be terminated "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2014 Supp. 38-2269(a). The Revised Kansas Code for Care of Children, K.S.A. 2014 Supp.

38-2201 *et seq.*, lists a number of nonexclusive factors a district court must consider in determining a parent's unfitness. See K.S.A. 2014 Supp. 38-2269(b) and (c). Any one of the factors may, but does not necessarily, establish grounds for terminating a parent's rights. K.S.A. 2014 Supp. 38-2269(f). A district court is not limited only to the statutory factors in making a determination of unfitness. K.S.A. 2014 Supp. 38-2269(b).

When reviewing a district court's findings on this point, our standard of review is clear: The district court's findings must be supported by clear and convincing evidence. K.S.A. 2014 Supp. 38-2269(a). We determine whether such evidence could have convinced a rational factfinder such facts were highly probable, *i.e.*, by clear and convincing evidence, when viewed in the light most favorable to the State. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In making this determination, we do "not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." 286 Kan. at 705.

1.      *Mother's unfitness*

Mother argues that while the State presented some evidence of her lack of compliance with the reintegration plans, the evidence did not show a complete lack of compliance. She goes on to state that she more consistently complied with the case plan established in July 2014, as was evidenced by her last case manager's testimony that there had been more consistent contact and only a few missed UA tests. Mother also contends that she had acquired approved housing and had completed required and voluntary programs, and the only requirement she lacked was employment.

The State, however, presented evidence that Mother had no contact with her case managers in May 2013 or from March 2014 to July 2014, and had only limited contact in November 2014. The State also presented evidence showing that Mother had missed 14 UA tests in 2012, two in 2013, and two in 2014. The record indicates that Mother missed

4

an additional 28 appointments between February 2013 and June 2013, for a total of 46 missed UA tests. Mother also did not submit any UA samples between March 2014 and July 2014 because she was not in contact with her case manager. Moreover, twice she tested positive for methamphetamine—once in August 2012 after a hair follicle test and again in September 2014. The September UA test came back negative after further testing, but Mother's delay in arriving for the additional testing may have caused the negative result.

The State further showed that Mother had inconsistent contact with the children. Visits were contingent on negative UA results, so every time Mother missed a UA test, she was not allowed to see the children. Several visits were also canceled because Mother failed to make the proper arrangements or confirm the visit. By December 2014, Mother had seen T.O. and J.O. only a handful of times since August 2013. She had seen J.A.F. even less because he refused to attend some of the visits, although they apparently remained in contact. The record also indicates Mother had not seen H.O. since August 2013 because it was recommended that H.O. not see Mother due to behavior issues.

Evidence was also presented that Mother had failed to acquire stable housing or employment. While Mother had an approved home, she was at risk of losing it at the time of the termination hearing because she was unemployed. If she did not find a job by December 31—essentially 4 weeks from the hearing—she would be responsible for paying the $978 monthly rent, which she would not be able to pay without a job. Although she had applied to several places, Mother had no interviews scheduled. She had acquired three different jobs since June 2012 but remained at each one for only a few months at the most.

Our review of the record shows the State presented sufficient evidence that could have convinced a rational factfinder that the factors relied upon by the district court to

5

find unfitness were highly probable. Therefore, the district court's determination that Mother was unfit was supported by clear and convincing evidence.

2.    *Unfitness unlikely to change in the foreseeable future*

Mother also argues the district court's determination that her unfitness is unlikely to change in the foreseeable future was not supported by clear and convincing evidence. More specifically, she claims the 5 months between the July 2014 case plan and the termination hearing in December was an insufficient period of time for the district court to make its determination. She also points out her improvement since the enactment of that case plan.

Our next step is to determine whether clear and convincing evidence supported the district court's determination that a parent's behavior is unlikely to change in the foreseeable future. See K.S.A. 2014 Supp. 38-2269(a). The term "'foreseeable future'" is measured from the child's perspective and takes into account a child's perception of time. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). This court has considered periods of time as short as 7 months to be the foreseeable future from a child's perspective. 41 Kan. App. 2d at 790. A court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

As mentioned, the district court's unfitness finding was based in part on Mother missing several UA tests and failing to acquire stable housing and employment. These three tasks were in place in October 2012. They were also in place when the new case plan was established in June 2014. So, while Mother may claim she had only 5 months to comply with the July 2014 case plan, the district court's decision was based in part on tasks she had more than 2 years to complete.

6

The district court's decision was further buttressed by the fact that in the month before the termination hearing, Mother missed both scheduled visits and one UA test. In fact, Mother was out of contact with her case manager for most of the month. Based on these facts, we have no trouble concluding that the district court's determination that Mother's unfitness was unlikely to change in the foreseeable future was supported by clear and convincing evidence.

3.      *Children's best interests*

Finally, Mother notes that the district court did not mention in its order that termination of her parental rights was in the best interests of the children, citing *In re K.R.*, 43 Kan. App. 2d 891, 233 P.3d 746 (2010).

Because it hears the evidence directly, "the district court is in the best position to [determine] the best interests of the child," and an appellate court cannot overturn the determination without finding an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* October 7, 2010. An abuse of discretion occurs when no reasonable person would agree with the district court or when the court bases its decision on an error of fact or an error of law. *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 293 Kan. 285, 292, 263 P.3d 767 (2011). "In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them (recognizing that the preponderance-of-the-evidence standard applies in the district court)." *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014). In considering termination, "the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2014 Supp. 38-2269(g)(l).

In *K.R.*, another panel of this court reversed the termination of the mother's parental rights, based in part on the district court's failure to consider the best interests of

7

the children. 43 Kan. App. 2d at 905. However, several factors distinguish *K.R.* from this case. In *K.R.* there were no allegations of addiction, no allegations of lack of interest in the children, and the children wanted to be with their mother. Here, there were allegations that Mother abused drugs, Mother's lack of contact with her case managers and several months without visits showed a lack of interest in the children, and the children did not appear to want to be with their mother. The record indicates that H.O. had a negative relationship with Mother such that visitation between Mother and H.O. was discouraged, J.O. and T.O. were attached to their placement, and J.A.F. wished to be adopted by his placement. Moreover, the district court's finding that termination was in the children's best interests was interwoven with its findings about Mother's unfitness. See *In re C.A.G.-V.*, No. 113,334, 2015 WL 5224828, at *4 (Kan. App. 2015) (unpublished opinion). In light of the record, we must conclude that the district court did not abuse its discretion in terminating Mother's parental rights.

Affirmed.